**MR. AND MRS. V., as parents and next friends of H.V., a minor, Plaintiffs**

**v.**

**YORK SCHOOL DISTRICT, et al., Defendants.**

No. CIV. 05–228–P–S.

United States District Court, D. Maine.

May 17, 2006.

Amy M. Sneirson, Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME, for Plaintiffs.

Eric R. Herlan, Drummond, Woodsum & MacMahon, Portland, ME, Sarah A. Forster, Assistant Attorney General, Augusta, ME, for Defendants.

## MEMORANDUM DECISION ON MOTIONS TO SUPPLEMENT RECORD

COHEN, United States Magistrate Judge.

Both the Maine Department of Education ("MDOE") and Mr. and Mrs. V., as parents and next friends of H.V., a minor ("Parents"), move pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, to supplement the administrative record in the instant appeal of a decision of an MDOE hearing officer. *See* Motion To Submit Additional Evidence, etc. ("MDOE's Motion") (Docket No. 13); Plaintiffs' Motion To Permit Presentation of Additional Evidence, etc. ("Plaintiffs' Motion") (Docket No. 15). For the reasons that follow, both motions are denied.

### I. Applicable Legal Standard

The IDEA directs that a court reviewing state educational proceedings "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C)(i) & (ii). Nonetheless, as the First Circuit has clarified, a party has no absolute right to adduce additional evidence upon request:

> ... As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. To determine whether this burden has been satisfied, judicial inqui-

ry begins with the administrative record. A district court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1 st Cir.1990) (citation and internal punctuation omitted).

## II. Analysis

### A. Backdrop

On June 17, 2005 the Parents filed a request for a due-process hearing with the MDOE. *See* Administrative Record ("Record"), § I at 1. By letter dated June 20, 2005 the MDOE appointed Rita Furlow to preside as hearing officer in the case. *See id.* at 12. By letter dated June 22, 2005 counsel for the York School District ("York") requested that Furlow recuse herself. *See id.* at 15–16. She did so by letter dated June 27, 2005. *See id.* at 18. The MDOE then, by letter dated July 12, 2005, appointed Shari Broder ("Hearing Officer") to serve as hearing officer in the matter. *See id.* at 21–22. The Hearing Officer presided at an administrative hearing that consumed six days (September 7–9, September 30, October 5 and October 14, 2005). *See id.*, § VIII at 1443, 1533, 1624 & § IX at 1664, 1752, 1843. The Parents and York requested and received the Hearing Officer's permission to submit post-hearing briefs, which were due on October 21, 2005. *See id.*, § VII at 1312. On that date, both parties filed lengthy post-hearing memoranda. *See id.* at 1314–1417. Approximately one week later, on or about October 28, 2005, the Parents' counsel happened to learn, in their capacity as counsel in an unrelated Cape Elizabeth matter, that the MDOE had appointed the Hearing Officer to serve as complaint investigator in the Cape Elizabeth case. *See* Plaintiffs' Motion at 7; Declaration of Amy Sneirson ("Sneirson Decl.") (Docket No. 16) ¶¶ 11–12; Maine Department of Education's Opposition to Plaintiffs' Motion To Permit Presentation of Additional Evidence ("MDOE's Opposition") (Docket No. 21) at 3.

On or about November 10, 2005 the Hearing Officer issued a decision adverse to the Parents. *See* Record, § VII at 1418–41. She synopsized the Parents' position, noting, *inter alia*, that they had argued: "The student's experience from fifth through mid-seventh grade was one of growing frustration with regard to mainstream academics in social studies and science, continued poor performance in math and reading comprehension, social isolation, and a growing and unhealthy dependence upon adults, particularly Amy Carestia [H.V.'s special-education teacher]." *Id.* at 1434. She went on to conclude that York had provided H.V. with a free appropriate public education during fifth, sixth and seventh grades and therefore was not responsible for the cost of H.V.'s unilateral placement at a private institution, Learning Skills Academy ("LSA") in Rye, New Hampshire. *See id.* at 1426–27, 1441. In so concluding she noted, among other things: "Amy Carestia, who was a very credible witness, was very supportive of the student, and worked hard to provide her with an environment in which she could be successful. Although the student's education program was not perfect, she was successful in it and received meaningful benefits, as was apparent from her grades, test scores and most anecdotal reports." *Id.* at 1437. The Parents' counsel received a copy of the Hearing Officer's decision on November 14, 2005. *See* Sneirson Decl. ¶ 13.

On December 14, 2005 the Parents filed the instant complaint, naming the MDOE and York as defendants and asserting, *inter alia:* "The hearing officer's simultaneous service as a complaint investigator of the state educational agency was a violation of the IDEA's due process procedures that guarantee parent[s] of children with disabilities the ability to present their case to an impartial hearing officer." Complaint (Injunctive Relief Requested) ("Complaint") (Docket No. 1) ¶ 33. The Parents did not voice their objection to the Hearing Officer's simultaneous service as hearing officer and complaint investigator to the MDOE or to the Hearing Officer prior to filing the Complaint. *See* Affidavit of Pauline Lamontagne, Esq. ("Lamontagne Aff."), Exh. A to MDOE's Motion, ¶ 9; Affidavit of Shari B. Broder, Esq., Exh. B to MDOE's Motion, ¶ 9.[1] Subsequent to filing the instant suit, the Parents served the MDOE with a request for documents pursuant to Maine's Freedom of Access law. *See* Sneirson Decl. ¶ 15. The Parents' counsel reviewed documents responsive to that request on January 24, 2006. *See id.* ¶ 16.

### B. Analysis

The Parents seek to supplement the Record with three categories of evidence:

1. Documents obtained from the MDOE concerning its practices and policies and its relationship with the Hearing Officer, to "assist the Court in determining whether the administrative due process hearing afforded to HV was procedurally and substantively fair and impartial under the IDEA." Plaintiffs' Motion at 1–2.

2. Limited direct and cross-examination of the principal witnesses in the case, "to the extent that the Court deems it necessary to hear testimony of the princi-

pal witnesses in open court to make its own determination of credibility, due to its inability to rely upon the hearing officer's findings[.]" *Id.* at 2.

3. Testimony under oath of Mrs. V. to update the court as to H.V.'s status and condition since October 2005. *See id.*

The MDOE seeks to supplement the Record with two affidavits relating to the Parents' challenge to the Hearing Officer's impartiality. *See generally* MDOE's Motion.

For the reasons that follow, I conclude that the Parents' and the MDOE's cross-motions to supplement the Record should be denied.

### 1. Evidence Concerning Hearing Officer's Asserted Partiality

In support of admission of their first two categories of evidence, the Parents note as a threshold matter that both federal law and Maine special-education law (i) afford parents the right to an impartial due-process hearing and (ii) bar educational agencies from appointing, as a hearing officer, an employee of a state educational agency. *See* Plaintiffs' Motion at 3–4; 20 U.S.C. § 1415(f)(3)(A)(i)(I) ("A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum ... not be ... an employee of the State educational agency or the local educational agency involved in the education or care of the child[.]"); 34 C.F.R. § 300.508(a)(1) ("A hearing may not be conducted ... [b]y a person who is an employee of the State agency or the LEA that is involved in the education or care of the child[.]"); Maine Special Education Regulations ("MSER"), Code Me. R. 05–071 ch. 101, § 13.6(A) ("The hearing officer shall not be an em-

---

1. Shortly after the Hearing Officer's appointment, the Parents sought her recusal on the ground that she would be unable to render a timely decision. *See* Record, § I at 39. However, they point to no evidence that, prior to filing of the Complaint, they objected to her simultaneous service as a hearing officer and complaint investigator.

ployee of a public agency involved in the education or care of the student nor of any private school which provides education or care to the student. The term 'public agency' includes the Department [MDOE], the school administrative unit responsible for the education of the student, and the municipality of residence of the student's parents."). The Parents posit that an MDOE complaint investigator qualifies as an employee of the MDOE by virtue of operation of Maine's education statutes (specifically, 20–A M.R.S.A. § 7206(7)). See Plaintiffs' Motion at 4; 20–A M.R.S.A. § 7206(7) ("For the purposes of this section, while carrying out their official duties, complaint investigators are considered state employees and are entitled to the immunity provided state employees under the Maine Tort Claims Act.") (footnote omitted).

As the MDOE and York suggest, the Parents' bid for admission of these categories of evidence runs aground on the shoals of Falmouth Sch. Comm. v. Mr. B., 106 F.Supp.2d 69 (D.Me.2000). See MDOE's Opposition at 6–10; Defendant York's Opposition to Plaintiffs' Motion to Permit Presentation Of Additional Evidence, etc. ("York's Opposition") (Docket No. 23) at 6–9. In Falmouth, an MDOE hearing officer rendered a November 16, 1999 decision adverse to the Falmouth School Committee ("School Committee"). See Falmouth, 106 F.Supp.2d at 70–71. Commencing on December 10, 1999 the School Committee wrote first to the hearing officer and then, on receiving no response, to the MDOE requesting details about the hearing officer's child's schooling and about ex parte communications between the hearing officer and Mr. and Mrs. B. regarding her child's or their child's educational placement. See id. at 71. On February 23, 2000 the MDOE appointed the same hearing officer to conduct a new hearing into a separate complaint involving the same parties. See id.

Incident to that appointment, the MDOE directed the hearing officer to make a determination of the conflict-of-interest charge on the record with a court reporter. See id. at 71–72. At a pre-hearing held on March 8, 2000 she did so, disclosing that she was the parent of a son who suffered from hearing loss, that she never had any issues with his public schooling and that she enrolled him in private school for other reasons. See id. at 72. She declined to recuse herself in the new matter. See id.

The School Committee requested judicial review of the hearing officer's adverse November 1999 decision, seeking a bifurcated trial in which, as part of the first stage, it would have an opportunity to obtain additional discovery regarding the hearing officer's alleged bias. See id. at 70. In support of that request, the School Committee tendered an affidavit of a special-education director averring that she first learned on March 8, 2000 that the hearing officer was in fact a parent of a child with a disability who had placed her son in a private school due to her apparent dissatisfaction with the services he had received in public school. See id. at 71. The affidavit also detailed supposed improprieties observed during the course of the hearing in 1999. See id.

The court expressed sympathy for the plight of a party who suspects that its loss was attributable in some measure to an adjudicator's conflict of interest or bias. See id. at 72. Nonetheless, the court observed:

[T]here are powerful institutional interests in making post-decision challenges to an adjudicator the exception and not the rule. Each losing party searches for every possible reason to attack a negative decision, and issues that were insignificant or evanescent before the decision suddenly and unfairly (to the other party and the adjudicator) become mon-

umental. An "appellate" tribunal is seldom in a good position to make the necessary factual determination. Discovery presents its own dangers. Unless a very high standard is set for any disgruntled litigant to be able to question an adjudicator about his/her personal affairs, fishing expeditions on the subject will be inevitable.

*Id.* at 73. The court noted: "[A]ssuming that the challenge to the hearing officer was timely, the ordinary course would be to send the case back to the hearing officer to develop the record on the disqualification issue." *Id.* (footnote omitted). However, the court determined that inasmuch as the record had been developed at the March 8 pre-hearing, no useful purpose would be served by a remand. *See id.* The court held that, on the extant record, the School Committee fell short of making a showing sufficient to justify the intrusive discovery sought. *See id.* at 74–75. It reasoned that for purposes of disqualification of school hearing officers, unlike federal judges, an appearance of partiality is insufficient; instead, "A conflict of interest or actual bias, hostility or prejudgment is required." *Id.* at 73.

▪ Viewed in the light of *Falmouth*, the Parents' request to supplement the Record to address the Hearing Officer's asserted partiality can be seen to fall short on several grounds. First and foremost, the request is untimely. The court in *Falmouth* described the timeliness issue in that case as "a close one," noting that the "general rule governing disqualification, normally applicable to the federal judiciary and administrative agencies alike, ... requires that such a claim be raised as soon as practicable after a party has reasonable cause to believe that grounds for disqualification exist[.]" *Id.* at 73 n. 4 (citation and internal quotation marks omitted). However, the court reasoned:

The affidavits are unclear on whether the School Committee knew earlier that the hearing officer had a child with special education needs. They are clear that information about the child's placement was not gained until March 8, 2000, presumably at the pre-hearing. But the School Committee bases its charge of partiality partly on the hearing officer's conduct at the November hearings. Because both state regulations and sound public policy require that a person challenge the appointment of a hearing officer only in good faith, I conclude that the School Committee was justified in delaying its challenge until it had more concrete information and therefore find the challenge timely.

*Id.* (citation omitted). In this case, by contrast, the Parents were aware of grounds for challenge to the Hearing Officer's impartiality as of October 28, 2005—prior to issuance of her decision—but chose to await her ruling rather than promptly raise the issue. They posit that, as in *Falmouth*, any delay on their part was necessary or appropriate to permit them to gather more information:

[T]he V family is justified in raising this challenge only after obtaining more concrete information concerning the hearing officer's lack of independence, as demonstrated by her ruling on the merits (especially as it relates to determinations of credibility disputes) and by evidence Plaintiffs ultimately gathered through a Freedom of Access Act request to the Department of Education.

Plaintiffs' Reply Memorandum in Support of Their Motion To Permit Presentation of Additional Evidence ("Plaintiffs' Reply") (Docket No. 27) at 5 n. 3. Their first proffered ground for delay—the desire to wait and see how the decision turned out—hurts rather than helps them. The strategy of lying in the weeds is precisely

the kind of conduct the timeliness requirement is designed to prevent. *See, e.g., Marcus v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor,* 548 F.2d 1044, 1051 (D.C.Cir.1976) ("It will not do for a claimant to suppress his misgivings while waiting anxiously to see whether the decision goes in his favor. A contrary rule would only countenance and encourage unacceptable inefficiency in the administrative process.").

Nor do the Parents fare any better with their second proffered ground for delay: to obtain the materials ultimately gleaned from their Freedom of Access request. First, from all that appears, the Parents could have filed the same Freedom of Access request and sought to introduce the resultant materials had they raised the issue of partiality with the Hearing Officer and the MDOE prior to issuance of the Hearing Officer's decision. Second, and in any event, the materials ultimately obtained add nothing to the basic argument that the Hearing Officer's service in dual capacities compromised her impartiality.[2]

In any event, even assuming *arguendo* that the Parents timely raised their challenge to the Hearing Officer's impartiality, I would deny the requested supplementation of the Record on the alternative bases that they (i) failed to exhaust administrative remedies and (ii) do not, on the Record as they propose it be supplemented, meet the standard necessary to set aside the Hearing Officer's decision.

As this court underscored in *Falmouth,* "assuming that the challenge to the hearing officer was timely, the ordinary course would be to send the case back to the hearing officer to develop the record on the disqualification issue." *Falmouth,* 106 F.Supp.2d at 73 (footnote omitted); *see also, e.g., School Union No. 37 v. Ms. C.,* Civil No. 05–194–B–W, 2006 WL 522103, *3, 2006 U.S. Dist. LEXIS 8250, at *7–*8 (D.Me. Mar.2, 2006) ("[T]he administrative proceedings were not a dress rehearsal for this federal court litigation and those administrative proceedings cannot be leapfrogged because of lassitude or in the hopes of gaining some advantage in the federal district court forum."). The Parents endeavor to distinguish their case with respect to this point on the bases that (i) the Hearing Officer never disclosed the dual appointment, about which the Parents' counsel learned coincidentally only after the evidentiary portion of the hearing had been completed and the case had been fully briefed, and, in any event, (ii) any such complaint at that juncture would have been futile. *See* Plaintiffs' Reply at 4–5.

■ The Parents' case was indeed regrettably far along when they learned of the asserted impropriety of which they now complain. However, that did not obviate the need recognized in *Falmouth* to afford the state educational agency an opportunity to come to grips with any objection, taking evidence if necessary. The Parents point to no statute or regulation that would have barred them, even at that late stage of the proceedings, from raising an objection to the Hearing Officer's impartiality; indeed, this court in *Falmouth* perceived no bar to remanding a case for MDOE consideration of a timely disqualification challenge, *see Falmouth,* 106 F.Supp.2d at 73.

---

2. The information gleaned from the Freedom of Access request essentially added another (duplicative) string to the Parents' bow, indicating that the simultaneous appointment of a hearing officer as a complaint investigator might violate certain internal MDOE policies.

*See, e.g.,* Sneirson Decl. ¶ 17. The Freedom of Access materials shed no light on whether the Hearing Officer harbored any actual bias or hostility against the Parents or, conversely, any favoritism toward York or school departments in general. *See, e.g., id.*

As concerns futility, the Parents speculate that had they immediately called this matter to the attention of the Hearing Officer and/or the MDOE, the "hearing officer likely would have pressed forward with the issuance of the decision, while withdrawing from her complaint investigation work (indeed, this is the path the MDOE chose when it became aware of the issue in December 2005)." Plaintiffs' Reply at 5; *see also, e.g.*, Lamontagne Aff. ¶ 10 (upon learning of this appeal, MDOE immediately terminated Hearing Officer's appointment as a complaint investigator in the unrelated Cape Elizabeth matter and appointed another individual to serve in that role). The Parents assert that "[t]his 'resolution' ... would not (and could not possibly) have eliminated the issue for this Court's consideration or erased the taint flowing from the Department's appointment of a hearing officer who remained available as a complaint investigator." Plaintiffs' Reply at 5 (footnote omitted).

Nonetheless, the MDOE's reaction upon learning of the Parents' objection subsequent to the issuance of the Hearing Officer's decision and the filing of the instant complaint is not a fair proxy for how the agency (or the Hearing Officer, for that matter) would have reacted had the issue been brought to its or her attention prior to issuance of that decision. There is every reason to believe that, had the Hearing Officer or the MDOE been apprised of the Parents' objection at that juncture, she or the agency would have addressed it. Possibly the Hearing Officer might have elected to recuse herself, in which case a new hearing officer may have seen fit to rehear some (if not all) of the evidence (much as the Parents now suggest this court should do). At the very least, even if the outcome was not to the Parents' liking, the court would have had the benefit of administrative-agency consideration of the matter.

In short, the Parents bypassed an available forum below—a circumstance in which, as this court made clear in *Falmouth*, it is properly chary of taking up a school-related issue—and now proffer no persuasive excuse for having done so. Therefore, they have failed to exhaust administrative remedies.

Finally, and alternatively, even assuming *arguendo* that the Parents had timely raised their challenge to the Hearing Officer's impartiality and offered a persuasive reason why this court should consider it for the first time on appeal, I would deny their request to supplement the Record on a third ground: that the evidence they propose to present does not meet the standard articulated in *Falmouth* for disqualification of a hearing officer.

On that front, the Parents protest that *Falmouth* does not require a showing of "actual bias, hostility or prejudgment" and, in any event, unlike the School Committee in *Falmouth*, they do not seek disqualification but, rather, introduction of evidence to assist the court in determining how much weight, if any, to afford the Hearing Officer's decision and findings. *See* Plaintiffs' Reply at 3–4. With respect to the issue of the showing they must make, the Parents posit that "the pertinent issue here is the hearing officer's continuing relationship with the Maine Department of Education, because—regardless of actual bias (and even in the absence of any evidence of such bias)—it is a bedrock principle of impartiality under the IDEA that individuals may not serve as independent hearing officers if they also are employees of the state educational agency." *Id.* at 3.

Nonetheless, it is equally a bedrock principle that a hearing officer "enjoys a presumption of honesty and integrity, which is only rebutted by a showing of some substantial countervailing reason to conclude that a decisionmaker is actually

biased with respect to factual issues being adjudicated." *Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1204 (10th Cir.1998) (citations and internal quotation marks omitted); *see also, e.g., Cavanagh v. Grasmick*, 75 F.Supp.2d 446, 461 (D.Md. 1999) ("Since administrative decisionmakers, like judicial ones, are entitled to a presumption of honesty and integrity, absent a showing of bias stemming from extrajudicial sources such as those indicated by 34 C.F.R. § 300.508(a), the presumption supporting the impartiality of the ALJs will remain unrebutted.") (citations and internal punctuation omitted). The Record as the Parents propose to supplement it reveals what amounts to an appearance of partiality based on the wearing of two hats simultaneously—a type of showing this court in *Falmouth* held insufficient to disqualify a school hearing officer. *See Falmouth*, 106 F.Supp.2d at 73.

■ The Parents' effort to distinguish *Falmouth* on the basis that they do not seek disqualification, *see* Plaintiffs' Reply at 4, likewise falls flat. Like the School Committee in *Falmouth*, the Parents allege that their due-process right to an impartial hearing officer has been contravened. *Compare Falmouth*, 106 F.Supp.2d at 70 *with* Complaint ¶ 33. The fact that they eschew the remedy of remand for a new hearing does not transform the nature of their complaint. In any event, the Parents' preferred form of relief—to have this court jettison the Hearing Officer's findings and make its own credibility determinations, preferably with the benefit of limited live testimony from some of the principal witnesses—is simply (from their point of view) a less onerous method of accomplishing the goal of, in effect, disqualifying the Hearing Officer by removing her from the case.[3]

For the foregoing reasons, the Parents' motion to supplement the Record with evidence concerning the Hearing Officer's asserted lack of impartiality, and the MDOE's cross-motion to supplement the Record with responsive evidence, are denied.

## 2. Evidence Updating Student's Status

■ The Parents finally seek to supplement the Record with a third category of evidence, documenting H.V.'s status and programming since her hearing closed on October 14, 2005. *See* Plaintiffs' Motion at 10–14. The Parents argue: "The additional, non-cumulative evidence the family seeks to present concerning HV's academic and social performance at the Learning Skills Academy will be important in assessing and determining whether H.V.'s unilateral placement was and remains an appropriate one." Plaintiffs' Re-

---

**3.** Even assuming *arguendo* that I determined the Parents had a sustainable cause of action for violation of their right to an impartial due-process hearing, I would not have permitted a mini trial *de novo* in this forum. As York and the MDOE point out, the Parents' preferred remedy is in considerable tension with controlling First Circuit precedent. *See* York's Opposition at 1; MDOE's Opposition at 1–2; *see also, e.g., Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir.1993) (noting that in IDEA case, "the law contemplates an intermediate standard of review on the trial-court level—a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agen-

cy determination than clear-error review entails, but which, nevertheless, falls well short of complete *de novo* review."); *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("The determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo* .... The court should look with a critical eye on a claim, such as made here, that the credibility of a witness is a central issue. The claim of credibility should not be an 'open sesame' for additional evidence.").

ply at 7. Nonetheless, as this court observed in *Mr. I v. Maine Sch. Admin. Dist.* 55, 416 F.Supp.2d 147 (D.Me.2006), a showing that a private school placement is appropriate entails demonstrating that the school provides some element of special-education services in which the public school placement was deficient. *Mr.* I, 416 F.Supp.2d at 172. The fact that a child continues to thrive and make social and educational progress in a private setting, which is what the Parents desire to show, *see generally* Declaration of Mrs. V. (Docket No. 17), is irrelevant to that question, *see, e.g., Mr. I,* 416 F.Supp.2d at 172 & n. 18.[4] Accordingly, this request to supplement the Record also is denied.

### III. Conclusion

For the foregoing reasons, the motions of the Parents and the MDOE to supplement the administrative record are **DENIED.**

So ordered.

---

**4.** I permitted such supplementation in *Mr. I. See Mr. I. v. Maine Sch. Admin. Dist.*, No. Civ. 04–165–P–H, 2004 WL 2397402 (D.Me. Oct.27, 2004). However, the parents in that case proffered the update on the basis that it was relevant to whether the school properly had concluded that the child did not qualify as a special-education student. *See Mr. I.,* 2004 WL 2397402, at *2–*3.