STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-23-10

RESIDENTIAL AND COMMUNITY
SUPPORT SERVICES, INC.,

    Plaintiff/Petitioner,

    v.

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

    and,

JEANNE LAMBREW, in her official
capacity as Commissioner of the Maine
Department of Health and Human
Services,

    Defendants/Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER ON
MOTION TO DISMISS**

Pending before the court is Defendants/Respondents Department of Health

and Human Services and Commissioner Jeanne Lambrew's (collectively, "DHHS")

motion to dismiss Count II of Plaintiff/Petitioner Residential and Community

Support Services's ("RCSS") first amended complaint. For the following reasons,

DHHS's motion to dismiss is denied.

## BACKGROUND AND PROCEDURE

RCSS is a MaineCare provider that offers residential services to adults who

are unable to care for themselves and require extra support. Pl.'s Am. Compl. ¶¶ 7,

9. This case follows the final decision of Commissioner Lambrew ordering

recoupment of over 30 million dollars paid to RCSS as part of the MaineCare

1

program. DHHS's primary basis for recouping these funds was RCSS's failure to conduct proper background checks on employees who provided services to MaineCare participants. *Id.* ¶ 34.

RCSS commenced this action by petition and complaint dated February 10, 2023, and the court thereafter granted RCSS leave to amend its pleading.[1] The first amended complaint asserts two counts. In Count I, RCSS requests judicial review of DHHS's recoupment decision pursuant to M.R. Civ. P. 80C and the Administrative Procedures Act ("APA"). Pl.'s Am. Compl. ¶¶ 56-59. Count II, an independent claim, seeks relief for alleged violations of RCSS's state and federal procedural due process rights pursuant to 42 U.S.C. § 1983 and 14 M.R.S. § 5951 *et seq.* Pl.'s Am. Compl. ¶¶ 60-64.

According to the amended complaint, RCSS discovered during the administrative proceedings that any money recouped by the agency would go directly into DHHS's budget as unrestricted funds. *Id.* ¶¶ 51-52. Count II therefore alleges that the Commissioner had an institutional financial interest in the demanded recoupment, rendering her a biased decision-maker. *Id.* ¶¶ 63-64. It further asserts that judicial deference to the Commissioner's findings of fact as required by the APA, *see* 5 M.R.S. § 11007(3), would deprive RCSS of an unbiased fact-finder in violation of due process. *Id.* ¶ 65. Thus, among other relief, Count II

---

[1] The original petition and complaint was the subject of an earlier motion to dismiss and several other related motions. At oral argument held on December 8, 2023, the parties agreed that the motions submitted prior to the filing of the first amended complaint have been mooted by the amended pleading and DHHS's subsequently filed motion to dismiss.

requests that the court (1) declare 5 M.R.S. § 11007(3) unconstitutional as applied to this case; and (2) conduct a nondeferential, de novo review of the agency record.

In the present motion, DHHS moves to dismiss Count II pursuant to M.R. Civ. P. 12(b)(6) and 12(f). DHHS argues that dismissal is warranted for the following reasons:

1. Count II is barred by the exclusivity doctrine;
2. RCSS lacks a property interest that is protected by the Due Process Clause;
3. RCSS was afforded all process due;
4. RCSS failed to properly preserve its due process claim at the agency level; and
5. "[T]here is no right to due process regarding legislative enactments."

The parties have fully briefed these issues, and the court heard oral argument in this matter on December 8, 2023.

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83. "For purposes of a Rule 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *Id.* On review, the court examines the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Oakes v. Town of Richmond*, 2023 ME 65, ¶ 15, 303 A.3d 650 (quotation marks omitted). "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim." *Id.* (quotation marks omitted) (alterations in original). Because Maine is a

3

notice-pleading jurisdiction, "the level of scrutiny used to assess the sufficiency of a complaint is 'forgiving.'" *Id.* ¶ 16.

DISCUSSION

**I. Exclusivity Doctrine**

DHHS first argues that Count II is barred by Maine's exclusivity doctrine because the claim is based on the same factual allegations and seeks the same relief as the Rule 80C claim in Count I. DHHS's Mot. Dismiss 7-13. RCSS counters that Count II is distinct, and Rule 80C review is inadequate to redress its due process claim that the Commissioner was unconstitutionally biased. RCSS's Opp. Mot. 8. According to RCSS, Count II is essentially a precursor to Count I that seeks to determine the process due to RCSS, should it prevail in demonstrating institutional bias. That is, RCSS maintains that Count II is intended to establish the process and standard of review that the court should follow in addressing the substantive claims set forth in Count I. To that end, Count II requests, *inter alia*, a de novo review of the agency record by this court—relief RCSS says is unavailable within the context of a Rule 80C appeal.

Maine's exclusivity doctrine holds that when "direct review is available pursuant to Rule 80B [or 80C], it provides the exclusive process for judicial review *unless it is inadequate.*" *Gorham v. Androscoggin Cnty.*, 2011 ME 63, ¶ 22, 21 A.3d 115 (emphasis added); *see also Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981). When direct review pursuant to Rule 80B or 80C would not provide an "adequate remedy" for the petitioner's claim, the claim may be cognizable as an independent claim separate from any administrative appeal. *Gorham*, 2011 ME 63, ¶ 25, 21 A.3d 115.

4

The central question the court must answer, then, is whether Rule 80C review is adequate to redress the procedural due process violation claimed in Count II—that the final recoupment determination was made by an agency fact-finder and adjudicator who had an institutional financial interest in issuing a decision unfavorable to RCSS. At this preliminary stage, the court is unable to conclude that Rule 80C review would provide an adequate remedy for the constitutional violation alleged.

It is well established that due process guarantees "an impartial fact-finder and the right to a remedy should any violation of individual rights be found during the course of the due process proceeding." *Geary v. Dep't of Behavioral & Developmental Services,* 2003 ME 151, ¶ 19, 838 A.2d 1162. In many cases, parties aggrieved by an allegedly biased agency decision-maker will find an adequate remedy within the Rule 80C and APA framework, which provides a mechanism for augmenting the record if necessary to show bias and which permits the court to remand a case to the agency for a new hearing before a different and impartial decision-maker. *See* M.R. Civ. P. 80C(e); 5 M.R.S. §§ 11006(1), 11007(4); *see also Adelman v. Town of Baldwin,* 2000 ME 91, ¶¶ 6-7, 750 A.2d 577 (concluding that the Superior Court acted within the bounds of its discretion by striking an independent claim of bias as duplicative of the Rule 80B appeal). However, RCSS's assertion of bias is unique in nature, and the court does not share DHHS's confidence that Rule 80C's procedures are sufficient to remedy the claim of bias presented here. *See Beal v. Town of Stockton Springs,* 2017 ME 6, ¶ 15, 153 A.3d

5

768 ("Due process will vary from case to case . . . to assure the basic fairness of each particular action according to its circumstances." (quotation marks omitted)).

Indeed, RCSS does not allege individual bias on the part of an agency decision-maker, but rather asserts a claim of institutional bias. Specifically, Count II alleges that the Commissioner had an institutional financial interest in the demanded recoupment, a theory of bias for which there is legal support as addressed more fully below. *See infra pp.* 11-12; *Ward v. Village of Monroeville*, 409 U.S. 57 (1972). While DHHS may disagree with RCSS's challenge to the Commissioner's impartiality, RCSS's allegations of institutional bias must be accepted as true at this stage. *Nadeau v. Frydrych*, 2014 ME 154, ¶¶ 5, 8, 108 A.3d 1254. The court furthermore observes that the Commissioner, the decision-maker RCSS claims is biased, has a statutory obligation to issue the final recoupment decision and serves as the final agency decision-maker with fact-finding authority. *See* 22 M.R.S. § 42(7)(E) ("The recommendation of the hearing officer must be forwarded to the commissioner for a final decision . . . . The commissioner shall issue a final decision in writing . . . ."). In light of RCSS's theory of bias and the Commissioner's statutory role in the decision-making process, an impartial adjudication may not be possible at the agency level, and accordingly, a remand to the agency for this purpose may not provide effective relief. *See* 5 M.R.S. § 11007(4).[2]

---

[2] DHHS faults RCSS for failing to seek the Commissioner's recusal pursuant to 5 M.R.S. § 9063(1). However, as the First Circuit appropriately observed in *Esso Standard Oil Co. v. Cotto*, "the Supreme Court has considered recusal mechanisms

For these reasons, RCSS asks the court to conduct the impartial review that it allegedly cannot receive before the agency itself. To ensure that review accords with due process, RCSS requests that the court review the agency record de novo, giving no deference to the Commissioner's findings of fact. *See* Pl.'s Am. Compl. ¶ 65; *see also Mutton Hill Estates, Inc. v. Town of Oakland*, 468 A.2d 989, 993 (Me. 1983) (where Superior Court found that the plaintiff could not "get a fair, impartial, and expeditious hearing and decision from the Planning Board," a "nondeferential review of the record created before the Planning Board" was appropriate, and the "Superior Court's decision not to remand [was] a reasonable means of according [the plaintiff] its due process rights"). Rule 80C and the APA, however, do not permit a de novo review of the agency record. Instead, the scope of the court's review is circumscribed by 5 M.R.S. § 11007(3), which provides that "[t]he court may not substitute its judgment for that of the agency on questions of fact." The Superior Court's review on a Rule 80C appeal is therefore "deferential and limited." *Friends of Lincoln Lakes v. Bd. of Env't Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128.

Presumably due to the APA's inclusion of § 11007(3), the parties do not cite, and the court's own research does not reveal, any case where a Maine court performed a nondeferential, de novo review of the agency record within the context of a Rule 80C appeal. The most analogous case the court's research has uncovered is

---

ineffective where, as here, the petitioner alleges structural bias that would not be addressed by the substitution of particular adjudicators." 389 F.3d 212, 225 n.12 (1st Cir. 2004) (citing *Ward*, 409 U.S. at 61).

*Mutton Hill Estates, Inc. v. Town of Oakland*—a Rule 80B appeal in which the Law

Court, acknowledging bias and other impropriety on the part of a town Planning

Board, ordered the Superior Court to conduct a "nondeferential review of the record

created before the Planning Board" to determine certain facts. 468 A.2d at 993.

*Mutton Hill*, however, was a Rule 80B appeal of a municipal decision and thus, the

APA, including § 11007(3), did not constrain the Law Court's decision.[3] *See*

Alexander, *Maine Appellate Practice* 313 (4th ed. 2013). Because *Mutton Hill* was

decided under a different legal scheme, that case does not provide authority to

disregard § 11007(3) and perform a nondeferential review within the Rule 80C and

APA framework. Thus, in the absence of any authority suggesting that § 11007(3)

may be overlooked, it appears that the court cannot lawfully conduct a de novo

review of the agency record as part of RCSS's Rule 80C appeal; that relief would be

available only through an independent claim.

While the court does not take any position on the merits of RCSS's due

process claim, it notes that "[d]ue process is not a static concept; rather, its

requirements vary to assure the basic fairness of each particular action according to

its circumstances." *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222 (quotation

marks omitted). At this early juncture—and given RCSS's unique theory of bias—

the court is unable to conclude, as a matter of law, that Rule 80C review is adequate

to afford RCSS the relief that due process may require under the circumstances.

---

[3] The court's review of the version of M.R. Civ. P. 80B in effect at the time *Mutton Hill* was decided does not reveal any language similar to that in § 11007(3).

Accordingly, exclusivity principles do not bar RCSS from pursuing its due process claim of bias as an independent claim in Count II.

## II. Property Interest

DHHS argues that RCSS does not have a property interest that is protected by the Due Process Clause, and therefore, Count II fails as a matter of law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). The parties appear to agree that RCSS does not have a protected property interest in continued participation in the MaineCare program. Instead, RCSS claims a property interest in receiving and retaining payment for the services it properly rendered. RCSS's Opp. Mot. 12-13. DHHS disputes this framing, countering that this case involves the recoupment of funds that the agency ultimately found RCSS "was not entitled to receive." DHHS's Reply 1, 4. Thus, it says, "RCSS has not demonstrated it is entitled to constitutional protections if, as alleged, RCSS failed to comply with the MaineCare Benefits Manual." *Id.* at 4.

Contrary to DHHS's suggestions, the agency's determination that RCSS was "overpaid"—or any failure by RCSS to prove *actual* entitlement to the disputed funds—is not determinative of whether a property interest exists. Property interests do not rest upon actual entitlement, but upon "a legitimate *claim* of entitlement." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (emphasis added). Moreover, it is inaccurate to characterize RCSS's claimed

9

property interest as an interest in payments it "was not entitled to receive" because DHHS's decision that RCSS was overpaid is not yet final. *See Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 751 & n.3 (N.D. Tex. 2019). Indeed, RCSS has appealed this very determination and may still prevail on its Rule 80C claim, potentially resulting in RCSS's entitlement to some or all of the funds subject to recoupment.

Under these circumstances, the court concludes that RCSS offers the better characterization of the property interest at stake: A property interest in receiving and/or retaining payment for the services it properly rendered. DHHS does not meaningfully dispute the notion that a provider enjoys a property interest in payment for services it *properly* delivered. *See id.* at 751 (finding that plaintiff "has a valid property interest in receiving Medicare payments for services rendered"); *Ron Group, LLC v. Azar*, 574 F. Supp. 3d 1094, 1110-11 (M.D. Ala. 2021) (concluding that plaintiff "adequately alleged a protected property interest in full reimbursements for services rendered to Medicaid patients"). The court therefore concludes that Count II adequately alleges a constitutionally cognizable property interest.

### III. Whether RCSS Received Due Process

DHHS next asks the court to dismiss Count II because RCSS was afforded notice and a hearing and thus, received all the process it was due. DHHS's Mot. Dismiss 15-16. The court declines to dismiss on this basis, as the amended complaint sufficiently alleges that RCSS was deprived of a critical component of

10

procedural due process: The right to an impartial decision-maker. *See, e.g.,* *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases"); *Geary*, 2003 ME 151, ¶ 19, 838 A.2d 1162; *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 16 & n.3, 843 A.2d 18; *Mutton Hill*, 468 A.2d at 992.

While DHHS disputes RCSS's claim of bias and references the basic presumption of honesty and integrity that agency actors generally enjoy, *see Mr. & Mrs. V. ex rel. H.V. v. York Sch. Dist.*, 434 F. Supp. 2d 5, 12 (D. Me. 2006), it would be improper for the court to rely on that presumption to dismiss the due process claim in Count II. This matter appears before the court on a motion to dismiss, and as mentioned above, the court must accept RCSS's well-pled allegations of bias as true. *Nadeau*, 2014 ME 154, ¶¶ 5, 8, 108 A.3d 1254.

Moreover, decision-makers may be disqualified for bias based not only on their personal financial interests, but also upon the interests of the governmental entities they serve. *See Ward*, 409 U.S. at 59-61; *Brucker v. City of Doraville*, 38 F.4th 876, 882 (11th Cir. 2022); *Esso*, 389 F.3d at 219 ("a pecuniary interest need not be personal to compromise an adjudicator's neutrality"). This so-called "institutional" bias may arise when a decision-maker has executive responsibility over an entity's budget, and the entity stands to receive a significant financial benefit from a decision adverse to the plaintiff. *See Ward*, 409 U.S. at 59-61. RCSS cites cases suggesting that arrangements of this nature give rise to a "possible temptation" of bias that is inconsistent with the requirements of due process. *See*

11

*Ward*, 409 U.S. at 59-61 (finding a due process violation where the mayor who adjudicated the appellant's case had executive responsibility over his municipality's finances, and fines from his court contributed substantially to the municipal budget); *Esso*, 389 F.3d at 219 (bias concerns implicated where an "adjudicative body stands to benefit financially from the proceeding because any fine imposed [would] flow directly to [its] budget"); *see also Wolfram v. Town of N. Haven*, 2017 ME 114, ¶ 20, 163 A.3d 835 ("An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage.") (quotation marks omitted).

Thus, although RCSS does not allege that any agency actors were personally biased, Count II asserts that the Commissioner, the executive official who oversees DHHS, *see* 22-A M.R.S. § 204, had an institutional stake in the outcome of the recoupment decision, as the money recouped would go directly into DHHS's budget as unrestricted funds. Pl.'s Am. Compl. ¶¶ 51-52, 63-64. These allegations are sufficient to establish a procedural due process claim under Rule 12(b)(6)'s low threshold standard.[4] *See Oakes*, 2023 ME 65, ¶¶ 15-16, 303 A.3d 650.

---

[4] DHHS mentions that RCSS will be afforded due process through the Rule 80C review procedures, whereby the court will serve as the final decision-maker. DHHS's Reply 2-3. It is true that post-deprivation procedures available at state law may satisfy the federal Due Process Clause such that "no section 1983 action will lie." *Gregory v. Town of Pittsfield*, 479 A.2d 1304, 1308 (Me. 1984). However, to satisfy the federal due process standard, the state law procedures must "provide[] adequate redress to a plaintiff deprived of a constitutionally protected property interest." *Id.*; *see also Bushey v. Town of China*, 645 A.2d 615, 619 (Me. 1994). As discussed above, *see supra* Part I, Rule 80C's judicial review procedures may not offer RCSS an adequate remedy for the due process violation claimed.

## IV. Preservation/Waiver

As further grounds for seeking dismissal, DHHS asserts that RCSS did not preserve, and thus waived, its bias-based procedural due process claim. DHHS's Mot. Dismiss 16-18; *see also New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 59-60 (Me. 1988) (noting that the preservation rule in the administrative context "is premised on the broader doctrine of exhaustion of administrative remedies"). At oral argument, DHHS conceded that independent claims are not subject to the preservation/exhaustion requirement. That the requirement does not apply to independent claims is logical and appears to be consistent with case law. *See Gibson v. Berryhill*, 411 U.S. 564, 574-75 (1973) (where "clear purport of [the] complaint" was that the administrative process was "unconstitutionally constituted and so did not provide . . . an adequate administrative remedy," plaintiffs did not need to exhaust their administrative remedies); *see also id.* at n. 14 (noting that "administrative remedies have been deemed inadequate by federal courts and hence not subject to the exhaustion requirement, on a variety of grounds").

Thus, because the amended complaint sufficiently alleges that the administrative process is inadequate and hence, states a plausible independent claim, any failure by RCSS to preserve the issues or exhaust its administrative remedies is not fatal to its claim in Count II.[5]

---

[5] The court would reject DHHS's waiver and preservation arguments at this stage, even assuming the preservation requirement applied. To fully engage with DHHS's contentions, the court would have to look beyond the four corners of the

13

## V. Due Process and Legislative Enactments

DHHS finally argues that RCSS's due process claim "is barred because there is no right to due process regarding legislative enactments." DHHS's Mot. Dismiss 7, 18-20. The court disagrees.

It is axiomatic that "legislation which violates an express mandate of the constitution is invalid even though it is expedient or is otherwise in the public interest." *Maine Beer & Wine Wholesalers Ass'n v. State*, 619 A.2d 94, 97 (Me. 1993). This principle is no less applicable to statutory provisions that purport to deprive a person of property without due process of law. *Harrington v. Harrington*, 269 A.2d 310, 315 (Me. 1970). That a statutory provision may authorize a particular agency action does not preclude RCSS from challenging the statute on due process grounds or otherwise asserting a due process claim.[6]

---

complaint to the administrative record, which the court declines to do at this time. *See Greif v. Indep. Fabrication, Inc.*, 2019 ME 142, ¶ 4, 215 A.3d 1289 (the "court may not consider matters outside the pleadings on a motion to dismiss, except in limited circumstances not applicable here"). Moreover, RCSS plausibly argues that an exception to the preservation/exhaustion requirement is applicable. *See Houlton Band of Maliseet Indians v. Boyce*, 1997 ME 4, ¶ 11, 688 A.2d 908 (observing that the exhaustion requirement may be relaxed "[w]hen a party seeks relief that is beyond the jurisdiction of the administrative agency" and when it would be futile for the party to pursue the claim at the agency level (quotation marks omitted)).

[6] The authority DHHS cites, *Crispin v. Town of Scarborough*, is not to the contrary. 1999 ME 112, 736 A.2d 241. Although *Crispin* used broad language to describe the applicability of due process protections to "legislative acts of government," *id.* ¶ 18 ("[g]enerally, members of the public are not entitled to protection under the Due Process Clause when their property rights are adversely affected by the legislative acts of government"), a closer reading of the case places this language in its proper context. Based on the facts and the authority the *Crispin* court references, it is evident that the Law Court intended to reiterate the basic principle that there is no *pre-enactment* due process right to notice and a hearing on

## CONCLUSION

Based on the foregoing, DHHS's motion to dismiss Count II of the first amended complaint is denied.

The clerk is directed to schedule this matter for a telephonic status conference to discuss the future course of proceedings. *See* M.R. Civ. P. 80C(i).

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: 2/26/24

_____
Julia M. Lipez
Justice, Superior Court

---

whether a particular law should be passed. *See id.* ¶¶ 17-27. The court does not understand *Crispin* to preclude a party from mounting an as-applied due process challenge to an already-enacted statute.

15