John W. Rowe *vs.* Joseph E. Friend, and others.

Penobscot.   Opinion April 27, 1897.

*Taxes.   Assessment.   Collection.   R. S., c. 6, §§ 36, 39, 142.   Priv. and Spec. Laws, 1895, c. 301.*

The defendants, as assessors of the town of Etna, completed their assessment of the tax for the year 1895, including the town's proportion of the state tax for the same year and committed the same to the tax collector, two days before the state treasurer issued his warrant as provided by R. S., c. 6, § 36, and as required by the act of the legislature making the assessment of a state tax for the year 1895.

The state tax for the year 1895, was laid by the legislature, the only competent authority, by an act approved March 26, 1895. The proportion of the whole tax that was to be paid by each city, town and plantation in the state was fixed by that act. The amount apportioned thereby to the town of Etna was $340.14, the precise amount included by the assessors, as the town's proportion of the state tax, in their assessment and commitment.

In an action against the assessors for the arrest of the plaintiff by the tax collector for the non-payment of his tax, *held;* that the assessors' authority to assess and commit this tax did not depend upon the state treasurer's warrant.

The issuance of that warrant was a ministerial act, and such warrant was not the only nor the best evidence of the amount of the state tax that was to be assessed upon the polls and estates in the town of Etna. And that if the assessors saw fit to complete the assessment, including the state tax for the current year and commit the same to the collector before the issuance of the state treasurer's warrant, the tax-payer, at least, can find no fault.

The tax on the plaintiff's real estate in the record of assessment was assessed at $2.33, while in the lists committed to the collector it was stated to be $3.33. The latter amount is the correct assessment upon the real estate at the valuation placed thereon by the assessors.

*Held;* that this clerical error does not even make the assessment void, much less render the assessors liable for the plaintiff's arrest by the tax collector.

If the arrest of the plaintiff was unlawful because he offered to show the collector sufficient goods and chattels to pay the tax, still the defendants are not liable. The collector is not the servant of the assessors and they are not responsible for his illegal act, if any be shown.

ON REPORT.

The case appears in the opinion.

*G. W. Howe,* for plaintiff.

*C. A. Bailey,* for defendants.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WIS-
WELL, STROUT, JJ.

WISWELL, J. The plaintiff, having been arrested and committed to jail by the tax-collector of the town of Etna, for the non-payment of his tax in that town for the year 1895, and claiming that his arrest was illegal, brings this action therefor against the defendants, who were the assessors of the town, and, as such, assessed the tax and issued the warrant to the collector by virtue of which the plaintiff was arrested.

No question is raised as to the plaintiff's residence in Etna, and his consequent liability to taxation in that town. And the records introduced show the due election and qualification of the defendants as assessors. But it is claimed, in behalf of the plaintiff, that there were certain errors and mistakes in the assessment and commitment of the tax, and that the assessment and commitment were wholly unauthorized and void, because, although it included the town's proportional part of the state tax, the assessment was com-

pleted and committed to the collector on the thirteenth day of April, while the state treasurer's warrant was not issued until two days later.

Revised Statutes, c. 6, § 36, provide that: "When a state tax is ordered by the legislature, the treasurer of state shall forthwith send his warrants directed to municipal officers of each town or other place, requiring them to assess upon the polls and estates of each, its proportion of such tax for the current year." And one of the sections of the Act of the Legislature, making the assessment of a state tax for the year 1895, contains similar provisions, requiring the state treasurer to issue his warrant during the month of April of that year.

By R. S., c. 6, § 39: "Assessors of towns . . . . are not responsible for the assessment of any tax, which they are by law required to assess; but the liability shall rest solely with the corporations for whose benefit the tax was assessed, and the assessors shall be responsible only for their own personal faithfulness and integrity."

It is not denied that the assessors of Etna were required to assess the tax committed to the collector on the thirteenth of April, 1895 ; the only question is, whether they were authorized to complete the assessment, including the town's proportion of the state tax for the current year, and commit the same to the collector before the state treasurer had issued his warrant in accordance with the provisions of the general statute and of the special act above referred to.

We have no doubt that this question must be answered in the affirmative. The state tax for the year 1895 was laid by the legislature, the only competent authority, by an act approved March 26th, 1895. Chap. 301 Private and Special Laws of 1895. The proportion of the whole tax that was to be paid by each city, town and plantation in the state was fixed by that act. The amount apportioned thereby to the town of Etna was $340.14, the precise amount included by the assessors, as the town's proportion of the state tax, in their assessment and commitment.

We think that the assessors' authority to assess and commit this

tax did not depend upon the state treasurer's warrant. The issuance of that warrant was a ministerial act, and such warrant was not the only nor the best evidence of the amount of the state tax that was to be assessed upon the polls and estates in the town of Etna. If the assessors saw fit to complete the assessment, including the state tax for the current year, and commit the same to the collector before the issuance of the state treasurer's warrant, the tax payer, at least, and this is the only question considered, can find no fault.

This was the decision of the court in *Alvord* v. *Collin*, 20 Pick. 418, under statutes similar in purpose and effect. In that case it was said by the court: "The legislature, the only power competent to such an act, made a regular grant of a state tax for the year 1819, and duly made an apportionment of it among the several towns in the Commonwealth. Of this the evidence is unexceptionable. This authorized the assessors of Washington to assess the amount imposed upon that town. This authority did not depend upon the treasurer's warrant; and can not be defeated or annulled by any act or omission of any ministerial or other officer of the government. An assessment in pursuance of the grant and apportionment of a state tax would be valid, although made by the assessors, without any warrant from the treasurer. Such warrant may be competent authority for the assessors to act upon, but is not the only nor the highest evidence of the grant. The treasurer's authority to issue this precept depends upon the grant of the legislature, and the warrant is obligatory, only so far as it is in pursuance with the legislative act. The treasurer's warrant is a mandate to the assessors, binding upon them, for the disobedience to which they are subjected to the penalty prescribed by statute. Although they could not be compelled to act without this mandate, yet if they chose to act without it and did act in conformity with the statute, they would be justified and all others would be bound by their proceedings."

The assessors, then, being required by law to assess this tax, and being authorized to commit it when they did, they are only liable for their own personal faithfulness and integrity. No evidence has

been introduced showing any want of personal faithfulness or integrity upon the part of the assessors.

The plaintiff also complains of certain errors and mistakes in the assessment and commitment. For instance, the tax on the plaintiff's real estate in the record of the assessment is assessed at $2.33, while in the lists committed to the collector it is stated to be $3.33, making the plaintiff's whole tax as committed to the collector one dollar more than it appears to be in the assessors' records. The latter amount is the correct assessment upon the real estate at the valuation placed thereon by the assessors. This clerical error does not even make the assessment void, much less render the assessors liable for the plaintiff's arrest by the tax-collector, by reason of R. S., c. 6, § 142, which provides that no error, mistake or omission by the assessors, collector or treasurer, shall render the assessment void, and which gives a right of action against the town in favor of any one who has sustained damages by reason of such mistakes.

It is said in the brief of the plaintiff's counsel, that the statement of the whole tax in the record of the assessment and in the commitment is ten dollars greater than the aggregate of the several items thereof. If this were so, it would not invalidate the tax, by reason of the statute referred to, but an examination of the copies furnished the court discloses no such error.

Nor is there anything in the further claim, that the arrest was unlawful because the plaintiff offered to show the collector sufficient goods and chattels to pay the tax. The collector was not the servant of the assessors, and they are not responsible for his illegal act, if any such be shown. Although it is contended that two of the assessors personally directed the plaintiff's arrest, the evidence fails to substantiate this contention.

The entry will be,

*Judgment for defendants.*