## EASTPORT WATER COMPANY

v.

## INHABITANTS OF CITY OF EASTPORT.

Supreme Judicial Court of Maine.

March 14, 1972.

Verrill, Dana, Philbrick, Putnam & Williamson, by Michael T. Healy, Portland, for plaintiff.

Eldred H. Johnson, Machias, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff has appealed from a judgment entered in the Superior Court (in response to a proper motion of defendant) which dismissed the complaint of plaintiff for failure to state a claim upon which relief can be granted.

Plaintiff's action seeks damages (together with appropriate interest calculated at the generally prevailing legal rate) for mistaken overpayments of money alleged to have been made by plaintiff to the defendant City during the years 1963 to 1969, inclusive. The complaint alleges that plaintiff had made excess payments of personal property taxes which had been caused by a clerical error committed, originally, in 1961 by either the Assessor, Tax Collector or Treasurer of the defendant City.

The error is described to have been that (1) the true judgment of the City's assessors of the "actual value" of the service meters of plaintiff which were located in the City of Eastport as of April 1, 1961 was Five Thousand Nine Hundred Thirty-five dollars and ninety cents ($5,935.90), but (2) there was substituted of record for the correct figure, by reason of an erroneous decimal point transposition, the wrong and unintended valuation amount of Fifty-nine Thousand Three Hundred Fifty-nine dollars ($59,359.00); and (3) this incorrect figure was routinely and ministerially retained and utilized as the record amount to which in each of the years in question the percentage rate of tax established for that particular year was applied to arrive at the amount of the tax on the plaintiff's service meters.

Plaintiff maintains that a cause of action for damages caused by the above described clerical mistake of a tax official of the defendant City exists by virtue of the provisions of R.S.1954, Chapter 92, § 116, now 36 M.R.S.A. § 504 and reading:

"If money not raised for a legal object is assessed with other moneys legally raised, the assessment is not void; nor shall any error, mistake or omission by the assessors, tax collector or treasurer render it void; but any person paying such tax may bring his action against the municipality[1] in the Superior Court for the same county, and shall recover the sum not raised for a legal object, with 25% interest and costs, and any damages which he has sustained by reason of mistakes, errors or omissions of such officers."

The Court below ruled that since (1) the complaint omits allegations that any portion of the moneys paid by plaintiff as taxes to defendant City were for an illegal object of taxation by the City, and (2) such allegation is an essential element of any recovery under 36 M.R.S.A. § 504, the complaint must be dismissed for failure to state a cause of action.

■ The dismissal of the complaint was error. We hold that the complaint of the plaintiff states a claim upon which relief can be granted under 36 M.R.S.A. § 504 for damages actually sustained in the form of tax overpayments caused by a mistake of a tax official, entirely ministerial in nature, which placed upon the record a higher valuation amount than that actually arrived at by the assessors—independently of whether any portion of the taxes paid by plaintiff represented moneys "not raised for a legal object" of taxation by the City.

Regardless of surface ambiguity in the present statutory language, we find in the legislative history, and the analyses offered in earlier cases dealing with related issues, sufficiently clear indication that 36 M.R.S.A. § 504 delineates two fundamentally separate and distinct factual matrices for each of which, respectively, there is intended to be created a correlative remedial cause of action.

The validity of this conclusion amply appears from language first utilized in 1841 when the substantive principles now involved were originally formulated and promulgated as law. R.S.1841, Chapter 14, § 88 then read:

"If any sum of money shall be assessed, which was not granted and voted for a legal object, with other moneys legally granted and voted to be raised, the assessment shall not thereby be rendered void; nor shall any error, mistake or omission, by the assessors, collector, or treasurer, render the assessment void; but any person, paying any tax, which was not raised for a legal object, may bring his action against the town, in the district court in the county, in which such

<hr />

[1]. By P.L.1955, Chapter 399, § 1 "municipality" was substituted for "town" which appeared in R.S.1954, Chapter 92, § 116. In all other respects the language in both revisions is identical. Hereinafter, 36 M.R.S.A. § 504 will be used to include by reference, unless otherwise explicitly indicated, R.S.1954, Chapter 92, § 116.

town may lie, and shall be entitled to recover the sum he was assessed for such illegal object, with twenty-five percent interest, and costs; and he may bring his action against the town for any damages, he may have sustained by reason of the mistakes, errors or omissions of the officers aforesaid, and shall be entitled to recover the damages, he may have actually sustained."

Although it is arguable that this language used in 1841 is ambiguous as to its description of the person who is entitled to "bring his action against the town"—(i. e., the statute being unclear as to whether it connotes "any person, paying any tax", as contrasted with "any person, paying any tax, which was not raised for a legal object")—the ambiguity tends to be sufficiently resolved by the care taken in the 1841 wording to make explicit reference on *two separate occasions* to the right to "bring . . . action".

By the separate repetition of the authority for bringing an action, the 1841 statute, we believe, was seeking to emphasize that *two distinct* actions were contemplated to correspond to two separate, distinct and independent factual complexes: (1) the payment of a tax a portion of which had been raised for an illegal object, and (2) the payment of a tax, independently of the legality or illegality of the object of taxation, when there had been irregularities or deficiencies in the acts of tax officials in the performance of their tax duties—some "error, mistake or omission, by the assessors, collector, or treasurer."

Manifestly, a primary purpose of the 1841 statute was to proclaim the validity of the tax in *each* of these situations and to ensure performance of the taxpayer's duty to pay so that needed tax moneys would come into the coffers of the municipality.

While thus designed to ensure collection of the tax, simultaneously, the 1841 statute had a second equally clear basic objective—

a concern with fairness to the taxpayer. By resort to repetitive language to make intention doubly plain, the statute announced a remedial benefit to any taxpayer who had paid his tax in either of the situations delineated.

The taxpayer who had paid a tax a portion of which was assessed for an illegal object was informed that his remedy was to

"bring his action against the town, . . . and [he] shall be entitled to recover *the sum he was assessed for such illegal object, with twenty-five per cent interest*, and costs; . . . ." (Emphasis supplied.)

The taxpayer who had paid his tax in spite of, generally, some error, mistake or omission by the assessor, collector or treasurer was informed that he

"may bring his action against the town for *any damages,* he may have sustained by reason of the mistakes, errors or omissions of the officers aforesaid, and shall be entitled to recover *the damages,* he may have *actually* sustained." (Emphasis supplied.)

In the revision of 1857 the language of R.S.1841, Chapter 14, § 88, was modified. The alteration in 1857 was essentially a contraction of the 1841 wording. The 1857 language (Chapter 6, § 98) became:

"If any money not raised for a legal object, is assessed with other moneys legally raised, the assessment shall not be void, nor shall any error, mistake, or omission by the assessors, collector, or treasurer, render it void; but any person paying such tax, may bring his action against the town in the supreme judicial court for the same county, and shall recover the sum not raised for a legal object, with twenty-five per cent interest and costs, and any damages he has sustained by reason of the mistakes, errors, or omissions of such officers." [2]

2. The basic pattern of wording as fixed upon in 1857 has persisted through all subsequent statutory revisions, including that of 1964, with only the slightest of modifications to accomplish objectives unrelated to the underlying essential substantive content and which are without relevance to the issues at hand.

Thus, in 1857, there was, first, a change in the description of the person to whom the statute was affording a remedy and which tended more clearly to indicate that the person contemplated was one who paid a tax which involved *one of two alternative* factors: either (1) a tax with a portion assessed for an illegal object, or (2) a tax as to which, generally, tax officials had made some "error, mistake or omission."

Although in this aspect the 1857 language thus seemed to be an improvement upon the 1841 wording, in another respect the 1857 wording tended to be less effective by introducing an ambiguity regarding whether two distinct causes of action were created. The 1857 phrasing eliminated the *second separate* explicit mention of a right to bring action against the town—as it had existed in 1841 and as it was then placed in a direct and immediate linkage with the remedial concept:

"for any damages, he may have sustained by reason of the mistakes, errors or omissions of the officers aforesaid, . . .";

and as expressly distinguished from the 1841 initial separate reference to a right to "bring . . . action against the town" directly and immediately conjoined with the remedy:

"and shall be entitled to recover the sum he was assessed for such illegal object, with twenty-five per cent interest, and costs; . . .."

We conclude, however, that the language changes in the revision of 1857 were without design to produce a substantive departure from the intent which we have indicated as the reasonable meaning of the provisions utilized in 1841 when the statute first appeared. The 1857 modification was a revisional effort to present *the 1841 substance* in more concise and hopefully (if not entirely successfully) clearer wording. No other explanation for the language modification of 1857 has been called to our attention and none has been disclosed to us by independent research.

■ We decide, therefore, that since 1841 (under R.S.1841, Chapter 14, § 88) and until the present, under the subsequent counterpart statutes and including the provisions of R.S.1954, Chapter 92, § 116 and now 36 M.R.S.A. § 504, a cause of action exists for the benefit of one who, as an incident of the process by which he was subjected to tax and has paid his tax to a municipality, has sustained actual damages as the result of ministerial mistakes, errors or omissions by the taxing officials; and that such cause of action lies, regardless, and independently, of whether any portion of the tax was assessed for an illegal object of taxation.

Cases since 1841 in which the present problem has been given consideration (although no square decision of the exact point exists) support this conclusion.

In Gilman v. Inhabitants of Waterville, 59 Me. 491 (1871) there is a strong dictum to the effect that there are two separate branches to the statute under consideration each having its own distinctive remedy. This Court recognized that R.S.1857, Chapter 6, § 114 (the contracted language form of R.S.1841, Chapter 14, § 88) purports to allow a recovery, generally, so long only as

"the plaintiff has *suffered damage* by reason of the mistakes, errors, or omissions of the assessors, collector, or treasurer, . . .." (p. 493) (Emphasis supplied.)

For purposes of the decision of the particular case before it, and in relation to the ground of recovery conceived to be separately bottomed, the Court in *Gilman* denied plaintiff relief because plaintiff had selected the *wrong* common law *form of action* to permit recovery of the damages, *unliquidated* in character, to which plaintiff would be held entitled upon proof of a mistake by a tax official which had caused him actual damages. The Court decided that since ·(1) the plaintiff had brought "indebitatus (general) assumpsit for money had and received", and (2) common law

principles in such form of action permitted *only* a *liquidated sum* to be recovered, the plaintiff must be denied relief as to his claim for *unliquidated* damages. The Court observed that had plaintiff utilized as his form of action, "trespass on the case", he could have recovered under R.S.1857, Chapter 6, § 114, by proof that he had actually sustained damages (unliquidated) by reason of mistakes, errors or omissions of the taxing authorities.

Having thus disposed of this first distinct aspect of plaintiff's claim which sought *unliquidated damages,* the Court in *Gilman* considered, *additionally,* the separate contention of plaintiff that he be allowed to recover, as *appropriate in the form of action which he had instituted* (assumpsit for money had and received), the *liquidated sum* allowed under R.S.1857, Chapter 6, § 114, if he could prove that

> "certain sums, included in his tax, were raised for an illegal object." (p. 493)

On this branch of plaintiff's case, the Court avowed in *Gilman* that "if this were so" (p. 493)—(i. e., if plaintiff could establish that some portions of his tax were attributable to an illegal object of taxation)—his form of action was correct and he would be entitled to the *liquidated sum* (the amount attributable to the illegal object plus twenty-five per cent interest). On the merits, however, plaintiff was denied recovery, in this aspect of his claim, because the proof failed to establish that any portion of the tax paid by plaintiff was for an illegal object.

Thus, as far back as 1871, as illustrated in Gilman v. Inhabitants of Waterville, supra, this Court gave strong indication that there is a right of action against a municipality by one who has paid a tax to recover damages actually sustained and caused by errors, omissions or mistakes of tax officials; and that such cause of action is *separate and distinct from, and without necessary dependence upon,* a cause of action which seeks a recovery of such portion of a tax, together with twenty-five per cent interest thereon, as might have been assessed for an illegal object.

Furthermore, the analysis in *Gilman* tended to clarify the meaning of a terse dictum which had been promulgated one year earlier in Rogers v. Inhabitants of Greenbush, 58 Me. 390 (1870) and which, unamplified, might have been a source of confusion.

In *Rogers* (as in *Gilman* a year later) the plaintiff had chosen, as his form of action, "assumpsit for money had and received". (p. 390) In *Rogers* the plaintiff had made the choice of this form of action even though he was claiming *unliquidated* damages alleged to have been actually sustained as a result of mistakes by the taxing officials in the making of the assessments (rather than that any portion of the taxes had been raised for an illegal purpose and which would have entitled plaintiff to recovery of a *liquidated sum*). Thus, as *Gilman* subsequently elucidated, *the particular form of action relied upon* by the plaintiff in *Rogers* is the key to the correct understanding of the following language used by the Court in *Rogers:*

> "Whatever construction may be given to this section, [R.S.1857, Chapter 6, § 157] it is manifest that it does not authorize *this suit,* [i. e., a form of action of assumpsit for money had and received] . . .. The apparent intent of the section is . . . to leave the party, as to errors, mistakes, and omissions by the town officers, to his *action on the case* [i. e., the form of action of 'trespass on the case'] for his special damages [as an *unliquidated amount* for which under the common law as to forms of action 'trespass on the case' rather than 'indebitatus (general), assumpsit for money had and received' would be the proper recovery vehicle]." (p. 392) (Emphasis supplied.)

In light of *Gilman* it becomes clear that *Rogers* (and its decision sustaining a nonsuit of the plaintiff) stands for the legal proposition that plaintiff had failed in his claim, *not* because the Court regarded an illegal object of a portion of the tax to be an essential element of any recovery under the statute involved, but because

plaintiff had chosen *the wrong form of action* by which to assert his right, recognized to exist, to recover unliquidated damages actually sustained by reason of the mistake, error or omission of a tax official and *regardless of whether any portion of the tax paid by plaintiff was an illegal object of taxation.*

This same thread of distinction, tied to the *appropriateness of the form of action* chosen by plaintiff, explains the approach of the Court in Hayford v. City of Belfast, 69 Me. 63 (1879). There, once again, the defendant prevailed because plaintiff had wrongly chosen to rely upon "assumpsit for money had and received" as his form of action to recover *unliquidated* damages. In Hayford v. Belfast, supra, the Court by dictum acknowledged that plaintiff would be entitled to recover in *another form of action* (i. e., trespass on the case)

"for his damages sustained by reason of . . . errors or omissions, if any. R.S., [1871] c. 6, § 114. . . .." (p. 65)

independently of whether there might be involved any illegal object of taxation.

The Court's recognition in Hayford v. Belfast, supra, that, even absent an illegality of object in a portion of the tax, plaintiff could nevertheless have recovered from the municipality under R.S.1871, Chapter 6, § 114 for any damages actually sustained by him as a result of the mistakes, errors or omissions of any of the tax officials, *had he brought the appropriate form of action*,[3] was explicitly reaffirmed ten years later by a further dictum announced in Inhabitants of Topsham v. Blondell, 82 Me. 152, 19 A. 93 (1889). In that case, as to a tax which *in no respect involved any illegal purpose as to any portion of the tax* paid, the Court said:

"Having paid . . . the defendant would have been entitled to an action 'not to recover his money back, [a reiteration of the principle that such *liquidated sum* recovery would be dependent upon proof of an illegal purpose in at least a portion

of the tax]—but for his *damages* sustained by reason of such error on the part of the assessors, if any.' R.S. [1883] c. 6, § 142; Hayford v. Belfast, 69 Maine 63, 65." (p. 156, 19 A. p. 95) (Emphasis supplied.)

Similar corroborating dicta have appeared in Inhabitants of Norridgewock v. Walker, 71 Me. 181, 184 (1880); Rowe v. Friend, 90 Me. 241, 245, 38 A. 95 (1897).

The complaint of plaintiff (especially since under our present liberalized rules of procedure no problems arise from the technicalities of common law pleading which characterized an earlier era in our jurisprudential development) sufficiently sets forth a claim upon which relief can be granted under R.S.1954, Chapter 92, § 116, and 36 M.R.S.A. § 504. It is adequate as a claim for damages actually sustained (in the form of overpayments of money) and resulting from ministerial mistakes, errors or omissions by tax officials of the City of Eastport—regardless that it omits to allege that any portion of the moneys which had been paid as taxes by the plaintiff were for an illegal object of taxation by the defendant City.

Defendant presents an alternative argument to support the dismissal of the complaint. Defendant says that the mistake here involved is of a type which must be held to lie outside the "mistake, error or omission" contemplated by the statute invoked by plaintiff.

Defendant contends that a clerical irregularity which yields an incorrect valuation figure is excluded from the scope of 36 M.R.S.A. § 504 and must be remedied solely through resort to the abatement provisions of 36 M.R.S.A. § 841. Defendant makes this contention notwithstanding that the mistake with which we are presently concerned relates in no respect to an error in the exercise by the assessors of a discretion to form opinions of actual value but pertains only to a ministerial clerical error in having the opinion of the assessors, as

---

3. The same point had previously been suggested by a dictum in Inhabitants of

Boothbay v. Race, 68 Me. 351, 356, 357 (1878).

already reached in fact, correctly reflected upon the record.

The position taken by defendant is erroneous, as a misplaced reliance upon language extracted from the case of Emery v. Inhabitants of Sanford, 92 Me. 525, 43 A. 116 (1899) referring to

"an absence of the requisite formalities in assessments and commitments, and a failure to observe the regulations . . . intended to promote method, system, and uniformity in the mode of proceeding." (pp. 530, 531, 43 A. p. 118)

This language was used in *Emery* only in a narrow and specific context to differentiate one concrete, particularized situation from another. Yet, defendant fallaciously seeks to transform it into the delineation of a *generic, universally applicable* criterion with import far beyond any fair intendment of the *Emery* analysis.

In *Emery,* this Court confronted an action by a taxpayer brought under the 1883 equivalent (R.S.1883, Chapter 6, § 142) of 36 M.R.S.A. § 504. The taxpayer was claiming damages as actually sustained, in the form of a higher tax to the plaintiff, resulting from the

"omission of the assessors to include in their assessment a large amount of property · belonging to other persons which was legally liable to taxation in the defendant town." (p. 529, 43 A. p. 117)

In its decision that the statute did not contemplate such an "omission" by the assessors to be remediable in view of

"the mischief obviously designed to be prevented and the object sought to be accomplished" (p. 530, 43 A. p. 117)

this Court stated, *inter alia:*

"The word 'omission' in this statute should be considered in connection with the words 'error' and 'mistake' which precede it, and be interpreted with reference to the rule of ejusdem generis. It was intended to signify an absence of the requisite formalities in assessments and commitments, and a failure to observe the regulations of the statute which were intended to promote method, system and uniformity in the mode of proceeding. It was clearly never in the contemplation of the legislature that it would be extended to apply to cases of omission to include in the assessment all the property which ought to be taxed. . . . There is scarcely an assessment in the state that would not be open to assault for some such omission of property, either accidental or otherwise, and suits for damages in behalf of dissatisfied taxpayers· would multiply with vexatious rapidity. No authority cited by the plaintiff's counsel supports such a doctrine." (pp. 530, 531, 43 A. p. 118)

It is specious reasoning to leap, as does defendant, from this Court's specification in *Emery* of a single particular species of mistake, error or omission which could be most readily and cogently contrasted with the special type of omission under consideration in *Emery*—thereby to exhibit the incongruity of classifying such situation as an "omission" within the meaning of the statute—to the conclusion that a *universal* standard had been promulgated such that *only and exclusively* a "mistake, error or omission" in the *"requisite formalities· in assessments and commitments"* is remediable under 36 M.R.S.A. § 504.

We reject as illogical and unnecessarily restrictive the contention of defendant that a clerical ministerial mistake, in the form of an erroneous transposition of a decimal point by which a valuation figure is made to appear of record higher than was in fact the true judgment of the assessors, and which results in a substantial tax overpayment by the taxpayer, is beyond remedy under 36 M.R.S.A. § 504.

The complaint states a cause of action under that statute and was erroneously dismissed.

The entry is:

Appeal sustained.

All Justices concurring.