MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2023 ME 65
Docket:        Sag-22-279
Argued:        March 9, 2023
Decided:       October 3, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

WILHELMINE' DENNIS OAKES

v.

TOWN OF RICHMOND

CONNORS, J.

[¶1] The principal question raised in this appeal is how to contest a tax assessment that the putative taxpayer argues is not incorrect in the amount sought but should not be assessed against that taxpayer at all because the property does not belong to her.

[¶2] As discussed in more detail below, Wilhelmine' Dennis Oakes alleges that she does not own the property for which the Town of Richmond has been imposing tax assessments on her. To contest the Town's assessments, she filed a two-count complaint in the Superior Court (Sagadahoc County) seeking a declaratory judgment and damages. The court (*Mallonee, J.*) dismissed her suit on the ground that (1) there was no underlying cause of action to support her request for a declaratory judgment, and (2) she could not collect damages

because she failed to exhaust her administrative remedies by seeking an abatement. We disagree and vacate the judgment. In doing so, we clarify when a tax challenge should be pursued through the abatement process, when it should be the subject of a declaratory judgment action, and when the taxpayer may choose either avenue for redress.

## I. BACKGROUND

[¶3] Because we are reviewing the dismissal of a complaint for failure to state a cause of action,"[t]he following substantive facts are taken from the allegations in the complaint and are viewed as if they were admitted." *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 2, 252 A.3d 516.

**A.** **In 2008, Oakes received a deed from someone who she alleges did not own the property at issue**.

[¶4] The gist of Oakes's factual allegations is that she does not own the real property for which the Town is assessing taxes against her because the Town lacked title to the property when it deeded that property to her predecessor-in-title.

[¶5] The relevant history of the real property at issue began in 1952 when Jakov Komisnij acquired real property (Parcel A) in Richmond. Komisnij

died intestate in 1960, and all his property, including Parcel A, escheated to the State of Maine because he had no known widow or heirs.

[¶6] Abutting Parcel A is Parcel B, which was owned by Jakov Paljtschik[1] during the early 1960s. In 1962 and 1963, the Town filed tax liens for unpaid taxes assessed against Paljtschik. The Town eventually acquired title to Parcel B and deeded it to Elesowet and Rosalie Slostowsky in 1965.

[¶7] For unknown reasons, the Town also deeded Parcel A to Elesowet and Rosalie. The deed refers to Parcel A as "the Yakov Komishnij property" and states, "The purpose of this deed is to convey any interest the Grantor may have in the foregoing property by virtue of unpaid taxes for the tax years 1961, 1962, 1963, 1964, 1965." But there were no recorded or matured tax liens upon which the Town could base its title because Parcel A had escheated to the State several years earlier. Nonetheless, as of 1965, Elesowet and Rosalie possessed deeds from the Town purporting to convey both Parcel A and Parcel B.

[¶8] From 1967 to 1996, various letters were exchanged among interested parties regarding Parcel A. Indeed, public officials corresponded

---

[1] The pleadings utilize various spellings of Jakov Komisnij's and Jakov Paljtschik's names. For clarity, we use the spellings employed by the trial court.

4

with each other about what to do with Parcel A.[2]  Eventually, in 1996, the State authorized the sale of Parcel A to Rosalie, but she never paid the required sum or received a release or deed from the State.  Meanwhile, two attorneys sent letters to the Town about Parcel A's title defects, but the Town did not act.[3]  The Town's records suggest that it was aware of the title issue.  The assessment record for Parcel A notes, "We have property to State in 1962," but the next line states, "Never State property.  Error made 1962."

[¶9]  In 1999, three years after the State authorized the sale of Parcel A to Rosalie, the Town filed a tax lien against Elesowet and Rosalie for failure to pay taxes on Parcel A.  Rosalie purported to convey both Parcel A and Parcel B to the Town one year later.  The Town discharged the tax lien and deeded Parcel A by quitclaim deed with covenant to Oakes's predecessor-in-title.  In 2008, this individual deeded Parcel A by quitclaim deed with covenant to Oakes.

---

[2] For instance, in 1967, an assistant attorney general, the Sagadahoc County public administrator, and the forestry commissioner exchanged correspondence regarding how the State could sell Parcel A and concluded that a legislative resolve would be necessary.  This did not occur until 1996, when the 117th Legislature passed L.D. 1872, authorizing the release to Rosalie of the State's interest in Parcel A for an amount not to exceed $12,240.

[3] In 1976, an attorney wrote to the Town's manager stating, inter alia, that the Town foreclosed on Parcel A and sold it to Elesowet and Rosalie in 1965 but, because the property had escheated to the State, "the town had no title to the property and, therefore, the present owners have no title."  The Town took no action following this letter.  A similar letter was sent in 1977 by a different attorney, but again the Town did not act.

[¶10] An exhibit attached to the complaint reflects that Oakes became aware of Parcel A's title defects and attempted to resolve the issue with the Town in 2019. *See* M.R. Civ. P. 10(c) & Reporter's Notes December 1, 1959 (noting that Rule 10 "is substantially the same as Federal Rule 10"); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) ("The exhibits attached to the complaint . . . are part of the complaint 'for all purposes.' Fed. R. Civ. P. 10(c). Thus it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion."). Her efforts, however, were unsuccessful.

## B. Oakes sued the Town to stop the tax assessments and to collect damages.

[¶11] In 2021, Oakes filed a two-count complaint in the Superior Court against the Town seeking a declaratory judgment (Count 1) and damages (Count 2). She primarily alleged that upon Komisnij's death in 1960, Parcel A escheated to the State; that the Town is aware of Parcel A's title defects yet continues to tax the property; and that the Town has no authority to tax Parcel A because its true owner, the State, is a non-taxable entity. In Count 1, Oakes requested a judgment declaring, inter alia, that she does not have a taxable interest in the property. Count 2 seeks monetary damages, namely,

6

reimbursement for past paid taxes, statutory interest at the state-imposed rate for those paid taxes, and a refund of the purchase price of Parcel A.

**C.    The court granted the Town's motion to dismiss.**

[¶12]  The Town answered Oakes's complaint and subsequently filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), which motion the court granted.

[¶13]  As to Count 1, citing *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 10, 868 A.2d 172, the court reasoned that a declaratory judgment is an equitable form of relief that requires an independent underlying claim, and Oakes's complaint set forth two potential claims—an action to quiet title and an action for abatement.  The court concluded that because the six-year limitations period had run for a quiet title action, *see* 14 M.R.S. § 752 (2023), Oakes could not seek a declaratory judgment under that claim.  It also concluded that she could not pursue a declaratory judgment under an abatement claim or the damages she requested in Count 2 because she failed to exhaust her administrative remedies by following the abatement process set forth in 36 M.R.S. §§ 841, 843-44 (2023).  Oakes timely appealed.  *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2023).

## II. DISCUSSION

[¶14] As noted, *supra* ¶ 11, Oakes seeks (1) a declaration that the Town cannot assess taxes against her with respect to Parcel A because she does not own that property, and (2) damages based on her having paid assessments taxed to her in the past. After harmonizing precedent, we conclude that the claims asserted by Oakes for declaratory relief and for compensation survive the Town's motion to dismiss.

**A.** **We construe complaints liberally and will affirm the dismissal of a complaint pursuant to Rule 12(b)(6) only when there is no doubt that the plaintiff is not entitled to relief.**

[¶15] When reviewing the dismissal of a complaint, we review the complaint de novo "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted); *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254. "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim." *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted). "The general

8

rule is that only the facts alleged in the complaint may be considered . . . and must be assumed as true." *Id.* ¶ 8.

[¶16]  Importantly, because Maine is a notice-pleading jurisdiction, the level of scrutiny used to assess the sufficiency of a complaint is "forgiving." *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79 (quotation marks omitted).

**B.**  **Oakes may pursue a declaratory judgment action based on her allegations that the Town lacks authority to tax her on property that she does not own.**

[¶17]  As described more specifically below, for over two hundred years, our statutes and case law have provided that a party who challenges a tax on the ground that the property has been overvalued can pursue relief exclusively through an administrative abatement proceeding.  In contrast, if a party claims that the entire tax is unlawful, a civil action is appropriate for seeking redress. Beyond these two general principles, however, the analysis becomes more complicated.

[¶18]  The avenue to challenge the overvaluation of property by a municipality has been, and remains, an administrative appeal.[4]  Tax challenges for reasons other than an overvaluation were originally pursued through an

---

[4]  The appeal was originally to the Court of Sessions.  P.L. 1821, ch. 116, § 12 (approved Mar. 21, 1821).  Currently, an appeal proceeds to either a municipality's board of assessment review or to the county commissioners, with the option of ultimately seeking review by a court.  *See* 36 M.R.S. §§ 843(1), 844(1) (2023); M.R. Civ. P. 80B.

action in law for trespass (a tort) or assumpsit (for recovery of money), *see Ware v. Percival*, 61 Me. 391, 393 (1873), which actions then evolved into an action for a declaratory judgment after the enactment of the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963 (2023), in 1941 and the merger of law and equity in 1959, *see* M.R. Civ. P. 2 Reporter's Notes December 1, 1959; 2 Field, McKusick & Wroth, *Maine Civil Practice* § 57.1 at 45 (2d ed. 1970).[5]

[¶19]  Historically, a factor used to identify which procedural avenue was appropriate involved a taxpayer's duty to file a list of her taxable property with her local tax assessors.  Beginning in 1821, and in Massachusetts before that, by statute, all inhabitants of a municipality had to provide to their local tax assessors "true and perfect lists" of their taxable property.  *See* P.L. 1821, ch. 116, § 12 (approved Mar. 21, 1821); *Perry v. Town of Lincolnville*, 145 Me. 362, 363-65, 75 A.2d 851, 852 (1950); *Sears' Ex'rs v. Town of Nahant*, 91 N.E. 913, 913-14 (Mass. 1910).[6]

---

[5] *See also Stickney v. City of Bangor*, 30 Me. 404, 411 (1849); *Hemingway v. Town of Machias*, 33 Me. 445, 446 (1851); *Herriman v. Stowers*, 43 Me. 497, 500 (1857); *City of Bath v. Whitmore*, 79 Me. 182, 186, 9 A. 119, 120 (1887); *Talbot v. Town of Wesley*, 116 Me. 208, 210-11, 100 A. 937, 938 (1917); *Berry v. Daigle*, 322 A.2d 320, 324 (Me. 1974); *S.D. Warren Co. v. Town of Standish*, 1998 ME 66, ¶ 8, 708 A.2d 1019; *Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 4, 730 A.2d 1257.

[6] In 1933, the statutory duty expanded and required nonresidents who owned property within the municipality to file lists upon the assessor's request.  *See* R.S. ch. 180, § 70 (1933).  The list statute continued to distinguish between residents and nonresidents until 1970.  *See* P.L. 1969, ch. 579,

10

[¶20]  The filing of such a list, for those who had a duty to file, was (and still is in certain circumstances) a condition precedent to seeking an abatement. *See* P.L. 1821, ch. 116, § 12; 36 M.R.S. §§ 706-A(1), 841 (2023).  Hence, if someone was required to file a list and did not, the abatement process was foreclosed.  *See* P.L. 1821, ch. 116, § 12.  If, however, someone did not file a list but had no duty to do so, then the condition precedent did not apply. *See Portland Terminal Co. v. City of Portland*, 129 Me. 264, 267, 151 A. 460, 461 (1930)*.*  For example, someone might not be required to file a list because that person resided outside the town and the property that the assessor taxed was located outside the town, so the assessor lacked authority to tax that person's property.  *See Ware*, 61 Me. at 393 (explaining that the town assessor had "no jurisdiction" to tax the plaintiff because he was not an inhabitant, so the appropriate cause of action for him was to sue either in tort or assumpsit).

[¶21]  Under this framework, the delineation between the abatement process and a civil action was clear in most cases.  An inhabitant would provide the assessor with a list; if the inhabitant thought that the assessor's valuation of the property was lawful but excessive, then the inhabitant would seek an

---

§§ 3-5 (effective May 9, 1970).  By 1977, the statutory duty to file a list was eliminated unless the assessor specifically asked a taxpayer to file a list.  *See* P.L. 1977, ch. 509, § 13 (effective Oct. 24, 1977).  That remains the law today.  *See* 36 M.R.S. § 706-A (2023).

abatement through the administrative abatement process. If a non-inhabitant did not file a list and was taxed by the assessor and thought that the tax upon the non-inhabitant was unlawful, then the non-inhabitant would pursue a civil action against the assessor. *See, e.g.*, *id.*; *Herriman v. Stowers*, 43 Me. 497, 499-500 (1857).

[¶22] Over time, our case law identified the tax impositions that were deemed unlawful and should be pursued by civil action. As noted above, one category consisted of taxed parties that were not inhabitants of the town or otherwise required to file a list. *See Ware*, 61 Me. at 393. For example, in *Herriman*, we reinstated a trespass claim because the assessors "could only assess the inhabitants of their town, and the property within it. Beyond this, as assessors, they have no jurisdiction." 43 Me. at 499. We also said in *Herriman* that an abatement proceeding "applies only where there has been over taxation, where there was authority to tax, and not where the whole tax was unauthorized and illegal." *Id*. at 500.

[¶23] The focus on the assessor's jurisdiction and whether the "whole" tax was illegal raised the question as to what avenue for redress was appropriate when the taxpayer was an inhabitant or owned property that the assessor had the authority to tax but the town assessed additional property that

the assessor could not tax. We treated that situation as an overvaluation, requiring redress to be pursued through the abatement process. *See, e.g.*, *Stickney v. City of Bangor*, 30 Me. 404, 412 (1849); *Hemingway v. Town of Machias,* 33 Me. 445, 446 (1851); *City of Bath v. Whitmore*, 79 Me. 182, 186, 9 A. 119, 120 (1887).

[¶24] It was within this context that we stated that the abatement process was the correct avenue through which to pursue relief when the taxpayer claims that the assessment included property she did not own. *See Whitmore*, 79 Me. at 186, 9 A. at 120. These were situations in which the assessor had jurisdiction to tax because the taxpayer was an inhabitant or owned other property located within the town. *See Herriman*, 43 Me. at 499; *Hemingway,* 33 Me. at 446; *Whitmore*, 79 Me. at 186, 9 A. at 120.[7]

[¶25] Then came a series of decisions addressing the correct avenue to seek redress when some or all of the taxed property was claimed to be exempt from taxation. This series reflects more flexibility as to which procedural avenue was appropriate to pursue. In *Portland Terminal Co. v. City of Portland*, a corporation filed for an abatement, arguing that land for which it was taxed

---

[7] This principle, treating claims that a tax was partially infirm as claims of overvaluation, was derived from Massachusetts precedent. *See Herriman*, 43 Me. at 500 (citing *Howe v. City of Boston*, 7 Cush. 273, 274, 61 Mass. 273, 274 (1851)).

was exempt from taxation based on a statute that characterized that land as "nonresident land." 129 Me. at 265-66, 151 A. at 460-61 (quotation marks omitted). The city resisted the corporation's right to be heard on appeal on the ground that it had failed to satisfy the condition precedent of filing a list. *Id.* at 266, 151 A. at 461.

[¶26] In response, we stated that if a resident taxpayer's property was overvalued, the taxpayer's only remedy was abatement; if property not belonging to the taxpayer was taxed to it, redress was still only through abatement; and if the resident did not file a list, despite having a duty to, then the abatement proceeding was barred. *Id.* at 267, 151 A. at 461. But if the challenger was a nonresident, then the statutory bar to filing for an abatement did not apply, so the challenger could seek an abatement if its property was overvalued "in any sense." *Id.*, 151 A. at 461. We continued by explaining, "Nor is [the nonresident] confined to abatement for relief. Other remedies are open to him." *Id.*, 151 A. at 461 (citing *Ware*, 61 Me. at 393 (noting that a non-inhabitant could sue in tort or assumpsit)). Hence, in *Portland Terminal Co.*, we appeared to indicate that when the challenger to a tax had no duty to file a list and claimed that the tax included exempt property, the challenger could pursue either an abatement or a civil action, linking the exclusivity of the

14

abatement process not to the assessor's "jurisdiction" over the taxpayer but to the statutory duty to file a list.

[¶27]  Thereafter, when the claim was that property was exempt from taxation, we recognized the challenger's ability to pursue redress either through an abatement proceeding or a declaratory judgment action, without a discussion whether the challenger was a resident of the town or had a duty to file a list. *See, e.g.*, *Holbrook Island Sanctuary v. Town of Brooksville*, 161 Me. 476, 477-78, 214 A.2d 660, 661-62 (1965); *Berry*, 322 A.2d at 324; *Hurricane Island Found. v. Town of Vinalhaven*, 2023 ME 33, ¶¶ 11-12, 295 A.3d 147.

[¶28]  In another category of decisions, however, we also did not discuss whether the taxed party was an inhabitant or owned property within the town's authority to tax but we did not apply the same flexibility in allowing pursuit of redress through either an abatement proceeding or a civil action; instead, we deemed only the civil action avenue appropriate. *See e.g.*, *Talbot v. Town of Wesley*, 116 Me. 208, 210-11, 100 A. 937, 937-38 (1917) (dismissing an abatement action because the tax was on an estate and therefore void); *Berry*, 322 A.2d at 324-25 (stating that the avenue for redress when the claim is that the tax is unconstitutional is through a declaratory judgment, not an abatement).

[¶29] The concept of a claim challenging the entirety of a tax as properly pursued through a declaratory judgment action as opposed to the abatement process has also lingered. *See S.D. Warren Co. v. Town of Standish*, 1998 ME 66, ¶ 8, 708 A.2d 1019.

[¶30] It is time to harmonize this precedent. We base our conclusion on multiple factors, including the elimination of the statutory requirement to file a list except when specifically requested, *see* 36 M.RS. § 706-A; the modernization of procedural rules in order to reduce pleading complexities, *see* M.R. Civ. P. 8 Reporter's Notes December 1, 1959; *Rancourt v. City of Bangor*, 400 A.2d 354, 356-57 (Me. 1979); 2 Harvey, *Maine Civil Practice* § 8:1 at 353-55 (3d ed. 2010); the exhaustion of administrative remedies being treated as a prudential, not a jurisdictional, doctrine, *see Berry v. Bd. of Trs., Me. State Ret. Sys.*, 663 A.2d 14, 19 (Me. 1995); the evolution away from the common law concept of "ultra vires" actions by government officials as personally liable;[8] the development of modern administrative law, usually requiring the assertion of constitutional

---

[8] Originally at common law, when a government officer acted without authority, even if in good faith or directed by his superior, the remedy was a tort claim against the officer personally. *See, e.g., Little v. Barreme*, 6 U.S. 170, 179 (1804). Thereafter, concepts of officer immunity developed, narrowing the circumstances in which an officer's conduct was deemed ultra vires, thus exposing the officer to personal liability. *See generally* Sina Kian, *The Path of the Constitution: The Original System of Remedies, How It Changed, and How the Court Responded*, 87 N.Y.U. L. Rev. 132, 154 (2012); Gregory Sisk, *Recovering the Tort Remedy for Federal Official Wrongdoing*, 96 Notre Dame L. Rev. 1789, 1792 (2021).

arguments before an agency in an administrative proceeding, *see Oronoka Rest., Inc. v. Me. State Liquor Comm'n*, 532 A.2d 1043, 1045 n.2 (Me. 1987); and the language of the relevant tax statutes, which is not contrary to our conclusions.[9]

[¶31]  In light of the foregoing factors, we now conclude as follows:

- The abatement process is the exclusive process for pursuing (a) a claim that a tax is discriminatorily excessive, *see Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 4, 730 A.2d 1257; (b) a challenge to an assessment practice or methodology, *see id.*; *Yusem v. Town of Raymond*, 2001 ME 61, ¶¶ 10-11, 769 A.2d 865; and (c) a true overvaluation claim, i.e., a claim that the assessor concluded that property was worth $X when it was in fact worth less than that amount, *see McCullough v. Town of Sanford*, 687 A.2d 629, 630-31 (Me. 1996).

- Exemption claims may be pursued through either the abatement process or a declaratory judgment action, regardless whether the challenger is a resident or owns other property taxable by the town's assessors. *Hurricane Island Found.*, 2023 ME 33, ¶ 12, 295 A.3d 147.

- Other challenges to a tax assessment may be pursued through either the abatement process or a declaratory judgment action, regardless whether the challenger is a resident or owns taxable property within the town.[10]

---

[9] Title 36 M.R.S. § 841(1) (2023) provides that, through the abatement process, municipal officers may "correct any illegality, error or irregularity in assessment," excluding "an error in the valuation of property"; an error in valuation must be presented to local assessors, not municipal officers. *Town of Eddington v. Maine*, 2017 ME 225, ¶ 16, 174 A.3d 321. "When the error at issue affects the taxability of the property itself or indicates any impropriety in the manner in which the property was assessed, the error is an illegality, error, or irregularity in assessment." *Id.* ¶ 18 (quotation marks omitted).

[10] To the extent that our precedent holds otherwise, it is overruled. For example, contrary to our ruling in *Berry v. Daigle*, we hold that a party challenging a tax based on its alleged unconstitutionality may choose either the abatement or declaratory judgment route. 322 A.2d at 323-24.

[¶32] Applying these conclusions, we hold that someone who has been taxed on property that she claims is not taxable because she does not own that property may challenge the tax either through the abatement process or a declaratory judgment action. Count 1 of Oakes's complaint, which seeks a declaratory judgment, can be read as challenging the tax on the ground that the Town lacks the authority to impose the tax upon her because she does not own the land at issue and therefore survives the Town's motion to dismiss.[11]

## C. Oakes may pursue compensation under 36 M.R.S. § 504 (2023).

[¶33] When the abatement process is properly pursued, the taxpayer may obtain pecuniary relief in the form of an abatement or refund with interest. *See* 36 M.R.S. §§ 152, 506-A (2023); *Camps Newfound/Owatonna Corp. v. Town*

---

[11] Language in the complaint suggests that Oakes is pursuing an action to quiet title. But in her factual allegations, she avers that she lacks title to the property in question, and that the property is owned by the State (a non-party). Setting aside the issue of whether the State would be a necessary or indispensable party to an action to quiet title in Parcel A, *see* 14 M.R.S. § 5963 (2023); M.R. Civ. P. 19(a); *Efstathiou v. Payeur*, 456 A.2d 891, 892-93 (Me. 1983), it is unclear how someone who claims no title has standing to pursue an action to quiet title, *see Adoption of Paisley*, 2018 ME 19, ¶ 23, 178 A.3d 1228; *see also Kondaur Cap. Corp. v. Hankins*, 2011 ME 82, ¶¶ 13-14, 25 A.3d 960 (explaining that because an entity did not have an interest in the promissory note at issue, it lacked standing to foreclose on the note). In any event, if Oakes could have pursued an action to quiet title, her claim would have accrued when she received her deed, which was more than six years from the date she filed her action and thus beyond the applicable limitations period. *See* 14 M.R.S. § 752 (2023); *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 14, 956 A.2d 110 (applying section 752 to a quiet title action). Hence, the trial court correctly concluded that Oakes could not pursue an action to quiet title. Reading her allegations generously, however, the gravamen of Oakes's complaint is that the Town should not be taxing her. Oakes acknowledges that the purpose of her suit is to stop the Town from assessing taxes on the property that it requires her to pay.

*of Harrison*, 1998 ME 20, ¶ 19, 705 A.2d 1109. Outside the statutory mechanism for obtaining a tax refund, 36 M.R.S. § 504 (2023) provides:

> If money not raised for a legal object is assessed with other moneys legally raised, the assessment is not void; nor shall any error, mistake or omission by the assessors, tax collector or treasurer render it void; but any person paying such tax may bring his action against the municipality in the Superior Court for the same county, and shall recover the sum not raised for a legal object, with 25% interest and costs, and any damages which he has sustained by reason of mistakes, errors or omissions of such officers.

[¶34] The principal case interpreting this statute is *Eastport Water Co. v. City of Eastport*, 288 A.2d 718 (Me. 1972). In *Eastport Water Co.*, the plaintiff appealed the dismissal of its complaint that alleged that it "had made excess payments of personal property taxes which had been caused by a clerical error committed, originally, in 1961" by a tax official. 288 A.2d at 718-19. More specifically, the plaintiff complained that

> (1) the true judgment of the City's assessors of the "actual value" of the service meters of plaintiff which were located in the City of Eastport as of April 1, 1961 was Five Thousand Nine Hundred Thirty-five dollars and ninety cents ($5,935.90), but (2) there was substituted of record for the correct figure, by reason of an erroneous decimal point transposition, the wrong and unintended valuation amount of Fifty-nine Thousand Three Hundred Fifty-nine dollars ($59,359.00); and (3) this incorrect figure was routinely and ministerially retained and utilized as the record amount to which in each of the years in question the percentage rate of tax established for that particular year was applied to arrive at the amount of the tax on the plaintiff's service meters.

*Id.* at 719.

[¶35]  In interpreting whether section 504 allowed such a challenge, we reasoned that the plain language of section 504 contemplates two separate factual scenarios: "(1) the payment of a tax a portion of which had been raised for an illegal object, and (2) the payment of a tax, independently of the legality or illegality of the object of taxation, when there had been irregularities or deficiencies in the acts of tax officials in the performance of their tax duties—some 'error, mistake or omission, by the assessors, collector, or treasurer.'" *Id.* at 719-21.

[¶36]  The defendant town argued that "a clerical irregularity which yields an incorrect valuation figure" had to be remedied solely through resort to the abatement process.  *Id*. at 723.  We disagreed, describing the mistake as "relat[ing] in no respect to an error in the exercise by the assessors of a discretion to form opinions of actual value but pertain[ing] only to a ministerial clerical error in having the opinion of the assessors."  *Id.*  Thus, the taxpayer could pursue the action under section 504 because it applies to "a clerical ministerial mistake, in the form of an erroneous transposition of a decimal point by which a valuation figure is made to appear of record higher than was in fact the true judgment of the assessors, and which results in a substantial tax

overpayment by the taxpayer." *Id*. at 724.

[¶37] In sum, when the claimant alleges that a tax was not raised for a legal object, section 504 provides a mechanism to recover the sum not raised for a legal object, with 25 percent interest. When the claimant alleges a clerical "error, omission or mistake," section 504 provides a claim for "damages." Such damages may consist of overpayments of money due to the error. *Eastport*, 288 A.2d at 720, 724. Therefore, to the extent Count 2 of Oakes's complaint seeks compensation based on a clerical error, this claim also survives a motion to dismiss for failure to state a claim.[12]

## III. CONCLUSION

[¶38] We hold that someone who has been taxed on property that the person claims is not taxable because the person does not own that property within the meaning of a municipality's statutory authority to tax may challenge the tax on that property either through the abatement process under 36 M.R.S. § 841 or a declaratory judgment action. Because both counts of Oakes's complaint state a claim, the dismissal of her complaint pursuant to Rule 12(b)(6) must be vacated.

---

[12] Regarding the Town's claims that Oakes's suit is barred by a statute of limitations or laches, we presume that the Town issues a new assessment of Parcel A each year, creating a new cause of action as to the taxes assessed that year, and we leave timeliness issues for further development before the trial court.

[¶39]  That said, we make no prognostication regarding the merits of Oakes's suit.  Even if Oakes is not the true owner of Parcel A, whether she is a "person in possession" under 36 M.R.S. § 553 (2023) remains an issue for resolution in the trial court.[13]  Also, section 504 is available only for clerical or ministerial errors.  *See Eastport Water Co.*, 288 A.2d at 724.  We express no opinion as to whether factual development will indicate whether the Town's assessments fall into this category.

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

---

Roger R. Therriault, Esq. (orally), and Michael E. Therriault, Esq., Therriault & Therriault, Bath, for appellant Wilhelmine' Dennis Oakes

Benjamin T. McCall, Esq. (orally), Jensen Baird, Portland, for appellee Town of Richmond

Sagadahoc County Superior Court docket number RE-2021-11
FOR CLERK REFERENCE ONLY

---

[13]  The Town asserts that, because Oakes is the record owner of Parcel A, it can assess taxes against her as a matter of law pursuant to 36 M.R.S. § 553 (2023) ("All real estate shall be taxed in the place where it is to the owner *or person in possession*, whether resident or nonresident." (emphasis added)).  *See also Seaborne v. Look*, 464 A.2d 222, 222 (Me. 1983) (explaining that section 553 "provides that real estate taxes may be assessed either to the owner or to a nonowner who is in possession.").  There are no facts alleged in the complaint addressing the issue of whether Oakes possesses the property within the meaning of section 553.  Whether Oakes is an "owner or person in possession" pursuant to section 553 is a determination for the trial court.